UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMIULLAH AHMADI, | Case No. 1:25-cv-01044-CDB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO GRANT PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER |
| v. | |
| MOISES BECERRA, *et al.*, | (Doc. 9) |
| Respondents. | **7-Day Objection Period** |
| | Clerk of the Court to Assign District Judge |

Petitioner Samiullah Ahmadi ("Petitioner") initiated this action with the filing of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on August 18, 2025, in which he challenges his detention by immigration authorities on statutory and constitutional grounds. (Doc. 1). Respondents are Moises Becerra (Acting Field Office Director of San Francisco Office of Detention and Removal of Immigration and Customs Enforcement ("ICE")), Todd M. Lyons (Acting Director of ICE), Kristi Noem (in her official capacity as Secretary of the Department of Homeland Security ("DHS")), Pam Bondi (in her official capacity as Attorney General of the United States), and Tonya Andrews (Facility Administrator at Golden State Annex) (collectively, "Respondents"). They timely responded to the petition (Doc. 7) and Petitioner replied (Doc. 8).

Pending before the undersigned is Petitioner's motion for temporary restraining order ("TRO"), filed on February 3, 2026. (Doc. 9). On February 4, 2026, Respondents timely filed an opposition to the motion for TRO. (Doc. 11). Although the face of Petitioner's motion requests a hearing (Doc. 9-1 at 1), considering the exigency of Petitioner's request for emergency injunctive relief, the undersigned finds it appropriate to deem the motion submitted for decision without hearing or oral argument. *See* Local Rule 230(g). For the reasons set forth herein, the undersigned recommends that Petitioner's motion for TRO be granted.

## I.    Relevant Background

### A.    Factual Background[1]

Petitioner, a 29-year-old man and citizen of Afghanistan, fled Afghanistan from fear of persecution and the Taliban and entered the United States near San Diego, California, on September 24, 2023, without inspection, admission, parole, valid entry documents or a visa. (Doc. 1 ¶¶ 1, 5, 17, 28); (Doc. 7 at 2); (Doc. 7-1, Declaration of Deportation Officer Alejandro Parra ("Parra Decl.") ¶¶ 5-6); (Doc. 9-1 at 2). Upon his arrival, Petitioner was apprehended and placed into removal proceedings. Parra Decl. ¶ 8. That same day, U.S. Customs and Border Protection ("CBP") issued Petitioner a Notice to Appear ("NTA") pursuant to section 240 of the Immigration and Nationality Act ("INA") and released Petitioner on his own recognizance with regular ICE check-ins since he was determined to present neither a flight risk nor a danger to the community. (Doc. 1 ¶ 28); (Doc. 7-1 at 7, Ex. 1) (Form I-213, Record of Deportable/Inadmissible Alien, dated July 18, 2025). Although Petitioner was issued and served a NTA, the NTA was not filed timely in immigration court within the 120 calendar days after scheduling the immigration case, and the Executive Office for Immigration Review ("EOIR") therefore deemed Petitioner's case a failure to prosecute. (Doc. 7-1 at 8, Ex. 1).

---

[1] The factual background is drawn from Petitioner's petition for writ of habeas corpus and other evidence in the record. (Docs. 1, 7-9). A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987)).

On September 16, 2024, Petitioner filed an asylum application with the United States Citizenship and Immigration Services ("USCIS") and was issued a receipt notice.  (Doc. 1 ¶ 29).  In February 2025, Petitioner filed a Form I-765 Application for Employment Authorization Document which was issued to him in March 2025.  *Id.*

On June 2, 2025, Petitioner attended his prescheduled ICE appointment where ICE took his passport, provided him with a copy, and installed the "BI Smart Link" phone application on his phone and scheduled follow-up appointments for June 16 and June 18, 2025.  *Id.* ¶ 30.  Petitioner complied with instructions to take a selfie every Monday.  *Id.*   On June 18, 2025, Petitioner attended his scheduled follow-up ICE appointment at the San Francisco office where he was re-detained without any notice or hearing or custody redetermination, processed for expedited removal pursuant to section 235(b) of the INA, and transferred to his current detention at the Golden State Annex Detention Facility.  *Id.* ¶¶ 31, 33; Parra Decl. ¶ 9.  Petitioner alleges that to date, he has maintained his residence at the address provided to ICE and USCIS, has consistently complied with all scheduled appointments, and that he had regularly and timely checked into his Intensive Supervision Appearance Program ("ISAP") appointments.  (Doc. 1 ¶ 32).  Petitioner alleges that he had been supporting himself by working as an Uber driver, that he has no criminal record, and there have been no other changed circumstances from the time he was initially apprehended and released.  *Id.*  He further alleges that he has expanded his community ties in the United States during the time he was released, and that he has extended family members in the United States, including siblings.  *Id.*

After he was re-detained, on July 14, 2025, Petitioner requested the immigration court reconsider his custody determination, and on July 25, 2025, the court denied his request, stating it lacked jurisdiction over Petitioner because he was mandatorily detained under 8 U.S.C. § 1225(b) as an applicant for admission who attempted to come into the United States at a port-of-entry.  Para Decl. ¶¶ 10, 11 (citing *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025)); (Doc. 7-1 at 15, Ex. 3) (Order of the Immigration Judge, dated July 25, 2025); (Doc. 1 ¶ 34).

On August 11, 2025, while in ICE detention, an asylum officer with USCIS interviewed Petitioner and found that he demonstrated a credible fear.  Para Decl. ¶ 12.  On September 4, 2025,

ICE placed Petitioner into removal proceedings. *Id*. ¶ 14. On September 18, 2025, Petitioner appeared with his counsel for his first master calendar hearing before an immigration judge and was granted a continuance in light of his counsel's request for additional preparation time. *Id*. ¶ 15. Petitioner's next hearing before the immigration court regarding his asylum claim was scheduled for October 21, 2025. *Id.* ¶ 16. Petitioner remains in detention pending his asylum claim proceedings in immigration court. *Id.* ¶ 17.

Although not alleged in the petition, in his motion for TRO, Petitioner asserts that he was issued a work permit, a U.S. social security card, and a California driver's license. (Doc. 9-1 at 3); (Doc. 9-2, Declaration of Bashir Ghazialam ("Ghazialam Decl.") ¶¶ 11, 14). He asserts that his individual hearing before the immigration judge was scheduled for January 22, 2026, but was continued due to the immigration judge's unavailability. (Doc. 9-1 at 4).

## II.    Governing Authority[2]

The standard for issuing a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *See Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Glossip v. Gross*, 576 U.S. 863, 876 (2015) (quoting *Winter*, 555 U.S. at 20); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious

---

[2] The Court has jurisdiction over Petitioner's claim that he is improperly detained, pursuant to 28 U.S.C. § 2241. *See* (Docs. 1, 3). In opposing Petitioner's petition, Respondents do not challenge the Court's jurisdiction over Petitioner's detention claim. *See generally* (Doc. 7).

questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

Preliminary injunctions are intended "merely to preserve the relative positions of the parties until a trial on the merits can be held, and to balance the equities at the litigation moves forward." *Lackey v Stinnie*, 604 U.S. 192, 200 (2025) (citations and quotations omitted). "The status quo refers to 'the last uncontested status which preceded the pending controversy.'" *E.A.P.C. v. Wofford*, No. 1:25-cv-01546-JLT-CDB, 2025 WL 3289185, at *8 (E.D. Cal. Nov. 25, 2025) (quoting *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 809 (9th Cir. 1963)).

## III.    Exhaustion

### A.    Governing Authority

"Section 2241 … 'does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus.'" *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004) (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001)). The Ninth Circuit, however, requires "as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241." *Castro-Cortez*, 239 F.3d at 1047 (citing *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997)). "Under the doctrine of exhaustion, 'no one is entitled to judicial relief for a supposed or threatened injury until the prescribed ... remedy has been exhausted.'" *Laing*, 370 F.3d at 997-98 (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Exhaustion can be either statutorily or judicially required. If exhaustion is required by statute, it may be mandatory and jurisdictional, but courts have discretion to waive a prudential requirement." *Id.* at 998 (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 746 (9th Cir. 1991); *Stratman v. Watt,* 656 F.2d 1321, 1325-26 (9th Cir. 1981)). "Although courts have discretion to waive the exhaustion requirement when it is prudentially required, this discretion is not unfettered…. Lower courts … [must] first determin[e whether] the exhaustion requirement has been satisfied or properly waived." *Id.* (internal citations omitted); *see Murillo v. Mathews*, 588 F.2d 759, 762 n.8 (9th Cir. 1978) ("Although the application of the rule requiring

exhaustion is not jurisdictional, but calls for the sound exercise of judicial discretion, it is not lightly to be disregarded.").

### B. Analysis

In his petition, Petitioner contends that exhaustion should be waived because administrative remedies are futile, his continued detention results in irreparable harm, he has exhausted all administrative remedies, and no further ones are available. (Doc. 1 ¶ 40).

Respondents do not address exhaustion of administrative remedies in their response to the petition nor their opposition to the motion for TRO. *See generally* (Docs. 7, 11).

The undersigned finds that the prudential exhaustion requirement should be waived as it would be futile to seek release by administrative means. Specifically, because Respondents contend that Petitioner is subject to indefinite mandatory detention under 8 U.S.C. § 1225(b), *see* (Doc. 7 at 3), under that framework, Petitioner has no statutory right to a bond hearing during his course of detention and therefore lacks recourse through statutory or administrative means. *See Jennings v. Rodriguez*, 583 U.S. 281, 282 (2018) ("§§ 1225(b) … do[e]s not give detained aliens the right to periodic bond hearings during the course of their detention."); *Rodriguez Diaz v. Garland*, 53 F. 4th 1189, 1201 (9th Cir. 2022). Further, the BIA has recently held that all noncitizens present within the country without admission are seeking admission pursuant to § 1225, rendering any administrative relief futile. *See J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at *7 n.9 (E.D. Cal. Oct. 27, 2025) ("In addition, pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens present in the United States without admission are 'seeking admission' for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.") (citing *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (B.I.A. 2025)).

Further, Petitioner has demonstrated irreparable harm. He has been re-detained for over seven months (since June 18, 2025) and has not received a bond hearing despite the government releasing Petitioner from his initial period of immigration detention on his own recognizance after it determined that Petitioner presented neither a flight risk nor a danger to the community. *See* (Doc. 7-1 at 7, Ex. 1). For these reasons, and because Respondents do not object to and do not

otherwise address Petitioner's arguments that exhaustion should be waived for futility and on grounds that continued detention causes him irreparable harm, waiver of the prudential exhaustion requirement for Petitioner's claim for habeas corpus relief is appropriate.  *See, e.g.*, *Chavez v. Noem*, No. 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *3 (S.D. Cal. Sept. 24, 2025) (waiving prudential exhaustion requirement because the BIA "already applied its expertise in deciding and designating" *Hurtado* as precedential, pursuant to which detainees are subject to mandatory detention without bond under § 1225(b)(2)); *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1253 (W.D. Wash. 2025) ("The Ninth Circuit has recognized 'the irreparable harms imposed on anyone subject to immigration detention.'") (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)); *J.A.C.P.*, 2025 WL 3013328, at *7 n.9.

## IV.    Discussion

### A.    Likelihood of Success on the Merits

#### 1.    Statutory Scheme

##### a.    Parties' Contentions

Petitioner asserts claims in his petition that Respondents lack statutory authority to detain him under 8 U.S.C. § 1225(b)(1) because Petitioner's detention is governed by 8 U.S.C. § 1226(a) and that his detention separately violates Petitioner's due process rights under the Fifth Amendment to the U.S. Constitution. (Doc. 1 ¶¶ 83-85).  Petitioner asserts that he is likely to succeed on the merits of his claims because under the three-part procedural due process test established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), all three factors support a finding that Respondents' revocation of his conditional parole release without a pre-deprivation hearing deprives him of his due process. (Doc. 9-1 at 7).  In his traverse, Petitioner contends that "the alleged misapplications of 8 U.S.C. § 1225 and [] § 1226 constitute Respondents' basis for his [unlawful] detention." (Doc. 8 at 2).  Petitioner argues that plain text of 8 U.S.C. § 1226(a) demonstrates that Petitioner is not subject to mandatory detention because Respondents served him with an arrest warrant and "warrants are only issued if the noncitizen is detained" under that statute, "not 8 U.S.C. § 1225." *Id.* at 4 (citing Doc. 8-1, Declaration of Bashir Ghazialam ISO Traverse ("Gahzialam Tr. Decl.") Ex. C).

Petitioner asserts that § 1226(a) applies to him because he "was released [pursuant to that statute] on his own recognizance, a form of conditional parole, on September 24, 2024." *Id.* at 8.

Respondents contend that the detention authority in this case is lawful under the Constitution and applicable provisions of the INA. (Doc. 11 at 1). Respondents assert that because Petitioner is an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225(b), he is unlikely to succeed on the merits and therefore does not qualify for a TRO. *Id.*

b.    <u>Statutory Immigration Framework (8 U.S.C. §§ 1225 and 1226)</u>

Two statutes govern the detention and removal of inadmissible noncitizens from the United States: 8 U.S.C. § 1226 and § 1225. Relevant here is the legal background accurately presented by the district court in *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503 (N.D. Cal. Sept 12, 2025):

> **1.    <u>Full Removal Proceedings and Discretionary Detention (§ 1226)</u>**
>
> The "usual removal process" involves an evidentiary hearing before an immigration judge. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011). Section § 1226 provides that while removal proceedings are pending, a noncitizen "may be arrested and detained" and that the government "may release the alien on ... conditional parole." § 1226(a)(2); *accord Thuraissigiam*, 591 U.S. at 108 (during removal proceedings, applicant may either be "detained" or "allowed to reside in this country"). When a person is apprehended under § 1226(a), an ICE officer makes the initial custody determination. *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). A noncitizen will be released if he or she "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing 8 C.F.R. § 236.1(c)(8)).
>
> "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 CFR §§ 236.1(d)(1)). If, at this hearing, the detainee demonstrates by the preponderance of the evidence that he or she is not "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk," the IJ will order his or his release. *Diaz*, 53 F.4th at

8

1197 (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). Once released, the noncitizen's bond is subject to revocation. Under 8 U.S.C. § 1226(b), "the DHS has authority to revoke a noncitizen's bond or parole 'at any time,' even if that individual has previously been released." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 968 (N.D. Cal. 2019). However, if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change in circumstance. *See Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). Where the release decision was made by a DHS officer, not an immigration judge, the Government's practice has been to require a showing of changed circumstances before re-arrest. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017).

### 2.    Expedited Removal and Mandatory Detention (§ 1225)

While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)," a process that provides for expedited removal. *Jennings*, 583 U.S. at 303 (2018). Under § 1225, a noncitizen "who has not been admitted or who arrives in the United States" is considered "an applicant for admission." 8 U.S.C. § 1225(a)(1). For certain applicants for admission, 8 U.S.C. § 1225 authorizes "expedited removal." § 1225(b)(1). § 1225(b)(1) provides that:

> "If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under section 212(a)(6)(C) or 212(a)(7) [8 U.S.C. § 1182(a)(6)(C) or 1182(a)(7)], the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 208 [8 USCS § 1158] or a fear of persecution."

Sections 8 U.S.C. § 1182(a)(6)(C) and 1182(a)(7) respectively refer to noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. Clause (iii) of § 1225(b)(1) allows the Attorney General (who has since delegated the responsibility to the Department of Homeland Security Secretary) to designate for expedited removal noncitizens "who ha[ve] not been admitted or paroled into the United States, and who ha[ve] not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of

9

the determination of inadmissibility under this subparagraph." § 1225(b)(1)(A)(iii)(II).

To summarize, under § 1225(b)(1), two groups of noncitizens are subject to expedited removal. First, there are "arriving" noncitizens who are inadmissible due to misrepresentation or failure to meet document requirements. The implementing agency regulations define "arriving alien" as applicants for admission "coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1.2. The second group –designated noncitizens –includes noncitizens who meet all of the following criteria: (1) they are inadmissible due to lack of a valid entry document or misrepresentation; (2) they have not "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility"; and (3) they are among those whom the Secretary of Homeland Security has designated for expedited removal. *Thuraissigiam*, 591 U.S. at 109; § 1225(b)(1).

"Initially, DHS's predecessor agency did not make any designation [under (3)], thereby limiting expedited removal only to 'arriving aliens,'" that is, noncitizens encountered at ports of entry. *Make the Rd. N.Y. v. Noem*, No. 25-cv-190 (JMC), 2025 U.S. Dist. LEXIS 169432, at *14 (D.D.C. Aug. 29, 2025). In the following years, DHS extended by designation expedited removal to noncitizens who arrive by sea and who have been present for fewer than two years, and to noncitizens apprehended within 100 air miles of any U.S. international land border who entered within the last 14 days. *Id.* This was the status quo until January 2025, when the Department of Homeland Security revised its § 1225 designation to "apply expedited removal to the fullest extent authorized by statute." Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025). Under this designation, expedited removal applies to noncitizens encountered *anywhere* within the United States, who have been in the United States for less than two years and are inadmissible for lack of valid documentation or misrepresentation. In short, expedited removal was expanded to apply for the first time to vast numbers of noncitizens present in the interior of the United States.

Under the expedited removal statute § 1225(b)(1), if an applicant "indicates either an intention to apply for asylum" or "a fear of persecution," the immigration officer "shall refer the alien for an interview by an asylum officer." §§ 1225(b)(1)(A)(i)–(ii). If the asylum officer determines that the applicant has a "credible fear," the applicant "receive[s] 'full consideration' of his asylum claim in a standard removal hearing." *Thuraissigiam*, 591 U.S. at 110. If the officer determines there is no "credible fear," the officer "shall order

the alien removed from the United States without further hearing or review." § 1225(b)(1)(B)(iii). However, the officer's decision may be appealed by the applicant to an immigration judge, who must conduct the review "to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." *Id.* Detention under § 1225(b)(1) is "mandatory" "pending a final determination of credible fear of persecution and if found not to have such a fear, until removed." *Id.* (citing § 1225(b)(1)(B)(iii)(IV) ("Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.")

[Section] 1225 also contains a provision that applies to applicants for admission not covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. This provision, 1225(b)(2), states that, subject to statutory exceptions, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a [full removal proceedings] of this title." § 1225(b)(2). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their full removal proceedings are pending. This is in contrast to the default detention regime under § 1226(a), which allows for discretionary release and review of detention through a bond hearing.

### 3.    The Government's Recent Change in Position

Until this year, the DHS has applied § 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation. This practice was codified by regulation. The regulations implementing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") state that "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In fact, the government has conceded in other contexts that "DHS's long-standing interpretation has been that 1226(a) [discretionary detention] applies to those who have crossed the border between ports of entry and are shortly thereafter apprehended." Dkt. No. 17 (citing Solicitor General, Transcript of Oral Argument at 44:24–45:2, *Biden v. Texas*, 597 U.S. 785 (2022) (No. 21-954)) . . .

In 2025, however, the Government's policy changed dramatically. The DHS revised its § 1225 designation to "apply expedited removal *to the fullest extent authorized by statute.*" Designating Aliens for

11

Expedited Removal, 90 Fed. Reg. 8139 (Jan. 24, 2025) (emphasis added). The Secretary of Homeland Security memorandum directed federal immigration officers to "consider ... whether to apply expedited removal" to "any alien DHS is aware of who is amenable to expedited removal but to whom expedited removal has not been applied." Dkt. No. 1 at ¶ 33. Officers are encouraged to "take steps to terminate any ongoing removal proceeding and/or any active parole status." *Id.* The memorandum states that DHS shall take the actions contemplated by the memorandum "in a manner that takes account of legitimate reliance interests," but states that "the expedited removal process includes asylum screening, which is sufficient to protect the reliance interests of any alien who has applied for asylum or planned to do so in a timely manner." Huffman Memorandum (Jan. 23, 2025).

Since mid-May of 2025, the Department of Homeland Security has made a practice of appearing at regular removal proceedings in immigration court, moving to dismiss the proceedings, and then re-arresting the individual in order to place them in expedited removal proceedings. Dkt. No. 1 at ¶¶ 35–40. If the immigration judge does not dismiss the full removal proceedings, ICE still makes an arrest, apparently in reliance on § 1225(b)(2)'s detention provision.

*Salcedo Aceros*, 2025 WL 2637503 at *1-4 (internal footnotes omitted).

c.    Parole Revocation

In *Y-Z-H-L v. Bostock*, 792 F. Supp. 3d 1123 (D. Or. 2025), the court explained the parole process in immigration cases and noted that before parole may be revoked, the parolee must be given written notice of the impending revocation, which must include a cogent description of the reasons supporting the revocation decision.  The court held:

Section 1182 . . . has a subsection titled "Temporary admission of nonimmigrants," which allows noncitizens, even those in required detention, to be "paroled" into the United States. This provision, at issue in this case, states:

The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and **when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or**

12

> **be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.**
>
> 8 U.S.C. § 1182(d)(5)(A).

*Id.* at 1133 (emphasis added). *Y-Z-H-L* determined that under the Administrative Procedure Act, immigration parolees are entitled to determinations related to their parole revocations that are not arbitrary, capricious or an abuse of discretion. *Id*. at 1146-47. An agency acts arbitrarily and capriciously by failing to make a reasoned determination or where the agency fails to "articulate[] a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id*. at 1144 (footnote and citation omitted). Parole revocations in the context of the INA must occur on a case-by-case basis and may occur "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled." *Id*. at 1133 (quoting 8 C.F.R. § 212.5(e)). 8 C.F.R. § 212.5(e) requires written notice of the termination of parole except where the immigrant has departed or when the specified period of parole has expired.

Applying *Y-Z-H-L* and § 212.5(e), in *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128 (W.D.N.Y. 2025), the court found that the INA requires a case-by-case analysis as to the decision to revoke humanitarian parole:

> This Court agrees that both common sense and the words of the statute require parole revocation to be analyzed on a case-by-case basis and that a decision to revoke parole "must attend to the reasons an individual [noncitizen] received parole." *See id*. There is no indication in the record that the government conducted any such analysis here. On the contrary, the letter Mata Velasquez received merely stated summarily that DHS had "revoked [his] parole." Docket Item 62-1 at 5. Thus, there is no indication that—as required by the statute and regulations—an official with authority made a determination specific to Mata Velasquez that either "the purpose for which [his] parole was authorized" has been "accomplish[ed]" or that "neither humanitarian reasons nor public benefit warrants [his] continued presence...in the United States." *See* 8 C.F.R. § 212.5(e)(2)(i). As a result, DHS's revocation of Mata Velasquez's parole violated his rights under the statute and regulations. *See Y-Z-L-H*, 2025 WL 1898025, at *13.

*Id.* at 146. And in *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025), the court reached a similar conclusion relying on the Due Process Clause:

> . . . **even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody**. *See Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his Court joins other courts of this district facing facts similar to the present case and finds Petitioner raised serious questions going to the merits of his claim that due process requires a hearing before an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2 (N.D. Cal. Mar. 1, 2021); *Ortiz Vargas v. Jennings*, No. 20-cv-5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega*, 415 F. Supp. 3d at 969 ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen released from immigration detention] have a liberty interest in remaining out of custody on bond.").

*Id.* (emphasis added). Other courts, including this Court, have held similarly. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); *see also Padilla v. U.S. Immigr. & Customs Enf't*, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023) ("The Supreme Court has consistently held that non-punitive detention violates the Constitution unless it is strictly limited, and, typically, accompanied by a prompt individualized hearing before a neutral decisionmaker to ensure that the imprisonment serves the government's legitimate goals.").

### d.    Analysis

Based on the facts before the undersigned, and undisputed by Respondents (*see* Docs. 7, 11), Petitioner had been present in the United States for a substantial amount of time when he was most recently re-arrested by immigration authorities. *See* (Doc. 7 at 3); Parra Decl. ¶ 6. Petitioner attaches to his traverse an Order of Release on Recognizance pursuant to section 236 of the INA, dated September 26, 2023, and signed by an immigration officer on that date, releasing Petitioner under a set of conditions. *See* Ghazialam Tr. Decl. Ex. A. These conditions required that Petitioner not change his place of residence prior to securing permission from the immigration officer, not violate any laws, and assist the DHS in obtaining necessary travel documents. Petitioner was warned that failure to comply with the conditions may result in a revocation of release and arrest. *Id.* Petitioner represents that he has complied with his release conditions and all scheduled

14

appointments, was issued a work permit, a U.S. Social Security Card, and a California driver's license, has been supporting himself by working as an Uber driver, has no criminal record, and has expanded his community ties in the United States.  (Doc. 1 ¶ 32); (Doc. 9-1 at 3).  Respondents neither challenge these representations nor assert that Petitioner violated any such conditions; nor can the undersigned locate any such facts in the record.  *See* (Docs. 1, 7-9, 11).

Under these circumstances, the undersigned finds that 8 U.S.C. § 1226(a) attaches as the governing legal scheme.  "Because Petitioner[ was] released on [his] own recognizance after [his] initial detention at the border, [he is] also ineligible for expedited removal proceedings as [he has] been "paroled" within the meaning of section 1225(b)(1)." *Valencia Zapata v. Kaiser*, 801 F. Supp. 3d 919, 935 n.4 (N.D. Cal. 2025) (citations omitted); *see Garcia v. Andrews*, No. 25-cv-01006 JLT SAB, 2025 WL 2420068, at *5 (E.D. Cal. Aug. 21, 2025) ("ICE may choose to release a person on parole. The decision is discretionary and is made on a case-by-case basis. An immigrant who has been detained at the border, may be paroled for humanitarian reasons or due to it providing a significant public benefit (8 U.S.C. § 1182(d)(5)(A)) or he may be conditionally released (8 U.S.C. § 1226(a)); *Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *4 (N.D. Cal. Sept. 5, 2025) (same). These are distinct procedures. A person on conditional parole is usually released on their own recognizance subject to certain conditions such as reporting requirements."). Petitioner's release from his initial period of immigration detention based on an Order of Release on Recognizance pursuant to section 236 of the INA clearly shows that Petitioner was subject to the provisions of § 1226 when he was most recently re-detained.

Further corroborating this finding is that Petitioner was arrested on June 18, 2025, pursuant to an arrest warrant invoking section 236 of the INA, *see* (Doc. 8-1 at 51, Ex. C), and that Petitioner was re-issued NTA on a Form I-862 dated September 4, 2025, indicating that he is "[i]n removal proceedings under section 240 of the [INA]," *see* (Doc. 7-1 at 10, Ex. 2); Parra Decl. ¶ 14.  This record evidence shows that Petitioner is subject to full removal proceedings under 1229a and subject to the statutory detention scheme under § 1226(a). *See Valencia Zapata*, 801 F. Supp. 3d at 936 ("From the moment that Petitioner[ was] provided with a Form I-862, the removal proceedings against [him] have always been under section 1229a. … The government cannot now

15

about-face and extinguish these liberty interests by pursuing mandatory detention against Petitioners, particularly given that Petitioners' September 4 arrest was pursuant to a I-200 warrant under section 1226.") (citations omitted); *Ramirez Clavijo v. Kaiser*, No. 25-cv-06248-BLF, 2025 WL 2419263, at *4 (N.D. Cal. Aug. 21, 2025) ("Here, the record clearly shows that the Government has consistently treated Petitioner pursuant to the framework under § 1226(a), and that DHS most recently detained Petitioner on July 24, 2025, by a warrant pursuant to that statute."); *see also Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1117 (E.D. Cal. 2025) (noting that section 1226(a) authorizes detention "only" on a warrant, whereas section 1225(b) contains no warrant requirement, and that "use of a warrant is strong evidence that petitioner may be detained, if at all, only pursuant to section 1226(a).").

Therefore, Petitioner has shown he is likely to succeed on his claim asserting a statutory violation under the INA.

### 2. *Procedural Due Process*

#### a. Governing Authority

"The Due Process Clause of the Fifth Amendment mandates that '[n]o person shall ... be deprived of life, liberty, or property, without due process of law.'" *United States v. Quintero*, 995 F.3d 1044, 1051 (9th Cir. 2021) (citing U.S. Const. amend. V). "The Due Process Clause 'protects individuals against two types of government action': violations of substantive due process and procedural due process." *Id.* (citing *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth … Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "[F]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Procedural due process requires that, even where a deprivation of liberty survives substantive due process scrutiny, the action 'be implemented in a fair manner.'" *Quintero*, 995 F.3d at 1051-52 (citing *Salerno*, 481 U.S. at 746). "The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal

conviction, is a principle basic to our society.'" *Mathews*, 424 U.S. at 902 (citation omitted). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted); *see Hernandez*, 872 F.3d at 990 ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Hernandez*, 872 F.3d at 990 (quoting *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)).

b.      Liberty Interest and *Mathews* Factor Test

Here, Petitioner shows that, under procedural due process, he has an underlying, continuing liberty interest in being free from re-detention. Specifically, Petitioner was conditionally released on an order of recognizance. *See* Ghazialam Tr. Decl. Ex. A. The decision to release Petitioner necessarily acknowledged the government's acceptance that Petitioner was not a flight risk nor a danger to the community. *See* (Doc. 7-1 at 7, Ex. 1) ("The subject did not appear to be a threat to national security, or public safety, and was released from the custody of [DHS] by 'Order of Recognizance' (O.R.) pending subject's immigration hearing. This release was authorized through proper channels."). *See also* 8 C.F.R. § 1236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding."); *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8). Petitioner remained released from immigration

17

detention for a significant amount of time—nearly two years—and without incident as Respondents do not contest Petitioner's allegations that he has complied with all conditions of his release, with all scheduled ICE appointments, and has no criminal record while Petitioner was free from immigration custody.  (Doc. 1 ¶ 32); (Doc. 9-1 at 3); *see* (Docs. 7, 11).

The undersigned agrees with other courts and other judges of this Court that noncitizens released from immigration custody on general orders of supervision or on their own recognizance (like Petitioner here) have a liberty interest in their freedom that implicates protections under principles of procedural due process.  *See Guillermo M.R. v. Kaiser*, 791 F. Supp. 3d 1021, 1031 (N.D. Cal. 2025) ("The fact that Petitioner is subject to discretionary conditions of release likewise does not mean he lacks a protectable liberty interest and can be re-detained without process."); *see id.* ("[E]ven if immigration detainees must wait months before a periodic re-review of their detention, those already released on immigration bond possess an interest in their continued liberty, which grows over time, and a due process right to a hearing before being re-detained."); *Nak Kim Chhoeun v. Marin*, 442 F. Supp. 3d 1233, 1245 (C.D. Cal. 2020).  Accord *Doe*, 787 F. Supp. 3d at 1099 (considering in connection with a petitioner's procedural due process claim that "[t]he lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty"); *Ramazan M. v. Andrews*, No. 1:25-cv-01356-KES-SKO (HC), 2025 WL 3145562, at *5-6 (E.D. Cal. Nov. 10, 2025) ("Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute").  *Cf. Daley v. Andrews*, No. 1:25-cv-00922-KES-CDB, 2026 WL 101840, at *9-10 (E.D. Cal. Jan. 14, 2026) (finding a petitioner mandatorily detained pursuant to § 1226(c) did not have a protectible liberty interest because he had remained in continuous custody and never released on supervision).

Because Petitioner has shown he has a protected liberty interest, the Court must determine what process is due before the government may terminate that liberty interest.  Here, Petitioner asserts that the three-factor test articulated in *Mathews* applies in consideration of Petitioner's claims implicating procedural due process.  (Doc. 9-1 at 7).  Respondents neither challenge nor

address the applicability of *Mathews*. *See* (Doc. 11). The Court agrees with Petitioner that the *Mathews* test applies.

*Mathews* "requires consideration of three distinct factors: [(1)] the private interest that will be affected by the official action; [(2)] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and [(3)] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335; *see Hernandez*, 872 F.3d at 993-94 (applying *Mathews* test in immigration detention context); *id.* at 993 ("The appropriateness of the requirement that ICE and IJs consider financial circumstances and alternative conditions of release is confirmed by the balance of factors under *Mathews*[.]").

As to the first factor, Petitioner has shown he has a significant private interest in remaining on release from detention. He has been out of immigration custody for nearly two years, and during that time, was issued a work permit, a U.S. Social Security Card, a California driver's license, and has been supporting himself while working as an Uber driver while expanding his community ties to the United States. (Doc. 1 ¶ 32); (Doc. 9-1 at 3). Respondents neither challenge these representations nor assert that Petitioner violated any conditions of his release; nor can the undersigned locate any such facts in the record. *See* (Docs. 1, 7-9, 11). Petitioner's continued liberty interest in remaining on release is undermined by his detention. *Doe*, 787 F. Supp. 3d at 1093-94 ("Freedom from imprisonment is at the core of the Due Process Clause … The lengthy duration of his conditional release [for over five years] as well as the meaningful connections [he] seems to have made with his community during that time create a powerful interest for [him] in his continued liberty.").

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is considerable here where he has not received any bond or custody redetermination. *Id.* at 1094; *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("'the risk of an erroneous deprivation of [petitioner's liberty] interest is high' where '[h]e has not received any bond or custody redetermination hearing.'") (citation omitted). Because there were

19

no procedural safeguards to determine if Petitioner's detention was justified, and Respondents have not articulated any change in circumstances while Petitioner was on release sufficient to justify Petitioner's detention, the probable value of the additional procedural safeguard of a bond hearing to determine whether Petitioner is a flight risk or a danger to the community is high such that this factor weighs in favor of granting a bond hearing. *See Doe*, 787 F. Supp. at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight and the unresolved questions about the timing and reliability of the new information, the risk of erroneous deprivation remains high."); *A.E.*, 2025 WL 1424382 at *5; *Ramazan*, 2025 WL 3145562, at *6.  Therefore, this factor weighs in favor of granting a bond hearing and/or release.

Third, the government's interest in detaining Petitioner without a bond hearing is low. *Doe*, 787 F. Supp. 3d at 1094 (citation omitted); *see Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("[T]he government's interest in re-arresting Ortega without a hearing before an IJ is low. The allegedly material change of circumstances—the Order of Removal—occurred over a year and a half ago, and during all that time, Ortega has strictly complied with all the requirements of his release.  If the government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.  Accordingly, the *Mathews* factors favor Ortega."); accord *Diaz v. Kaiser*, No. 3:25-cv-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("And, like other Courts in this district, the Court concludes that the government's interest in re-detaining Petitioner-[] without a hearing is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements.").  "The effort and cost to provide Petitioner with [a bond hearing] is minimal[.]"  *Doe*, 787 F. Supp. 3d at 1094. Therefore, any additional burden from requiring the government to seek a bond hearing before it may re-detain Petitioner does not outweigh his liberty interest and the risk of erroneous deprivation. Accordingly, this factor weighs in favor of granting a bond hearing and/or release.

In sum, the undersigned finds that, under *Mathews*, Petitioner demonstrates a likelihood of success on the merits of his claims asserting violations of his procedural due process rights.

### 3.    *Respondents' Request to Stay*

Respondents assert that should the Court grant either a TRO or preliminary injunction, the

20

Court should stay this case pending conclusion of appellate proceedings in *Rodriguez Vazquez*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025), which Respondents assert considers issues that are likely dispositive in this case, including the dispute over the applicability of 8 U.S.C. §§ 1225 or 1226 "to aliens similarly situated to Petitioner." (Doc. 11 at 1-2).

Having found that Petitioner's re-arrest and re-detention without a bond determination and continuous detention for more than seven months violates federal law and the U.S. Constitution, the undersigned will recommend the Court decline to stay proceedings. *See Zadvydas*, 533 U.S. at 690 (reaffirming that "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects.").

### B.   Irreparable Harm

The undersigned now turns to the second *Winter* factor. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury." *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)).

Petitioner contends that absent the issuance of a TRO, he will continue to suffer irreparable injury each day he remains in detention in violation of his constitutional rights. (Doc. 9-1 at 9). The undersigned agrees. As noted above, Petitioner shows that he is likely to succeed on the merits of his claim that his detention violates the INA and his constitutional rights to procedural due process. Therefore, Petitioner faces irreparable harm absent a TRO. This *Winter* factor weighs in favor of preliminary injunctive relief.

### C.   Balance of Equities and Public Interest

"When … the nonmovant is the government, the last two *Winter* factors 'merge.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Roman v. Wolf*, 977 F.3d 935, 940-41 (9th Cir. 2020) (per curiam)).

Here, Respondents do not address the balance of the equities and public interest factors. *See* (Doc. 11). Thus, Respondents fail to show that any harm they face here is more than minimal,

and do not identify any material burden they would experience from issuance of the requested injunction. Therefore, the undersigned has "'little difficulty concluding that the balance of hardships tips decidedly in [Petitioner's] favor.'" *See Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

Additionally, the undersigned finds that the public interest also weighs in Petitioner's favor. "It is always in the public interest to prevent the violation of a party's constitutional rights." *Index Newspapers LLC v. U.S. Marshals Serv.*, 977 F.3d 817, 838 (9th Cir. 2020) (citation omitted); *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("[P]ublic interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.") (citations omitted). "The public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz*, 2025 WL 1676854, at *3 (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021)).

Therefore, the undersigned finds these *Winter* factors weigh in favor of granting preliminary injunctive relief.

### D. Remedy

Based on the foregoing, the undersigned finds that Petitioner has met the requirements to issue a temporary restraining order. Respondents do not assert that Petitioner is a flight risk or a danger to the community. As § 1225(b) does not apply to Petitioner, Petitioner has therefore shown a likelihood of success regarding his claims that the government may not detain him pursuant to § 1225(b)(1) and that his detention separately violates his procedural due process rights. As Respondents do not provide any other basis to detain Petitioner and do not assert any risk of flight or danger to the community, the appropriate remedy is Petitioner's immediate release.

Further, the undersigned will recommend that in the event the government seeks to re-detain Petitioner, the government must provide notice to Petitioner a minimum of seven days in advance and must hold a bond hearing before a neutral arbiter pursuant to § 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered. Ordinarily, the Petitioner bears the burden of demonstrating by a preponderance of the evidence at a bond hearing that he is

neither a flight risk nor a danger to the community. *Rodriguez Diaz*, 53 F.4th at 1197. But as set forth above, an immigration judge has refused to consider Petitioner's request for a bond re-determination on the grounds that Petitioner purportedly is subject to mandatory detention under § 1225(b)(1). As such, the undersigned will recommend the Court follow the majority of courts in the Ninth Circuit in finding, under the circumstances presented here, Respondents should be compelled to provide Petitioner a bond redetermination hearing at which the government will bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight. "Doing so is logical" because "the immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention." M.*R.R. v. Chestnut*, No. 1:25-cv-01517-JLT-SKO, 2025 WL 3265446, at *14 (E.D. Cal. Nov. 24, 2025) (relying on *Pinchi*, 792 F. Supp. 3d at 1034, 1038); accord *Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *8-9 (E.D. Cal. Nov. 22, 2025).

Because Respondents have not provided any evidence of costs that it will incur due to Petitioner's release (*see* Docs. 7, 11), the Court finds that no security bond is required. *See Guillermo M.R.*, 791 F. Supp. 3d at 1038; *see also Lepe*, 801 F. Supp. 3d at 1120 (noting that courts "regularly waive security in cases like this").

## V.     Conclusion, Order, and Recommendation

Accordingly, the Clerk of the Court is DIRECTED to randomly assign a District Judge to this action.

And it is RECOMMENDED that:

1.  Petitioner's motion for a temporary restraining order (Doc. 9) be GRANTED.

2.  Respondents' request to stay this case pending the outcome of appellate proceedings in *Rodriguez Vasquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025) (Doc. 11) be DENIED.

3.  Respondents be ORDERED to release Petitioner immediately.

4. Respondents be ENJOINED and RESTRAINED from re-detaining Petitioner unless the government provides notice to Petitioner a minimum of seven (7) days in advance and holds a bond hearing before a neutral arbiter pursuant to section 1226(a) and applicable regulations, at which Petitioner's eligibility for bond must be considered, and where the government must demonstrate by clear and convincing evidence that Petitioner is a flight risk or danger to the community, such that physical custody is legally justified.

5. The parties be DIRECTED to file a joint status report within **14 days** of any order adopting these findings and recommendations as to Petitioner's status and address therein whether any further briefing is needed to address the petition on the merits.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within seven (7) days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b).  Although this objection period is shorter than provided by Local Rule, such an adjustment is warranted given Petitioner's application for emergency injunctive relief and the fact that the parties have extensively briefed the issues involved. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) ("The court may require a response within a shorter period if exigencies of the calendar require.").  Any objections filed should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed 15 pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity.  Any pages filed in excess of the 15-page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C).

///

///

///

A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:    **February 5, 2026**

_____
UNITED STATES MAGISTRATE JUDGE